UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PETE J. LEAUPEPETELE,

    Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

    Respondent.

CASE NO. 2:21-CV-961-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: November 19, 2021

## I. INTRODUCTION

Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action *pro se* to obtain release from detention or to have a bond hearing. Currently before the Court is the Government's return memorandum and motion to dismiss and accompanying declarations. Dkt. 7. Petitioner has not responded. Having considered the parties'

REPORT AND RECOMMENDATION - 1

submissions, the balance of the record, and the governing law, the Court recommends the Government's motion to dismiss be granted, the petition be denied and this case be dismissed.[1]

## II.   BACKGROUND

Petitioner, a native and citizen of Samoa, was admitted to the United States on a three-month visitor's visa in 1979. Dkt. 7-1 at ¶¶ 3, 4. Petitioner did not leave the United States, and has been convicted of three felonies and a gross misdemeanor since that time. Dkt. 7-1 at ¶¶ 5–7.

On August 19, 1987, Petitioner was convicted of Battery with Serious Bodily Injury in California and sentenced to 36 months confinement. *Id*. at ¶ 5. On September 20, 1990, Petitioner was convicted of Possession of Controlled Substance in California and sentenced to 365 days confinement; however, this conviction was vacated on March 27, 2020. *Id*. at ¶¶ 5, 15. On October 16, 1992, Petitioner was convicted of Murder in the Second Degree in Washington and sentenced to 150 months confinement; this conviction was vacated on March 4, 2005 and Petitioner was instead convicted of First Degree Manslaughter, sentenced to 75 months confinement and given credit for time served. *Id*. at ¶¶ 5, 6. Finally, Petitioner was convicted of the gross misdemeanor of Assault in the Fourth Degree on February 2, 2008, for which he was sentenced to 365 days confinement (with 362 days suspended). *Id*. at ¶ 7; Dkt. 7-3 at 8.

Petitioner was arrested and placed in ICE custody on February 26, 2019. Dkt. 7-1 at ¶ 8. He was served with a Notice to Appear ("NTA") charging him with removability pursuant to 8 U.S.C. §§ (a)(1)(B) (visa overstay), 1227 (a)(2)(A)(ii) (two crimes of moral turpitude) and 1227 (a)(2)(A)(iii) (aggravated felony). Dkt. 7-2 at 3. At a master calendar hearing on April 12, 2019,

---

[1] Petitioner also filed a motion to proceed *in forma pauperis* ("IFP"). Dkt. 6. But Petitioner has already paid the $5 filing fee in this matter. *See* Docket entry dated July 26, 2021. Accordingly, the Court recommends that Petitioner's IFP application be denied as moot.

Petitioner admitted the factual allegations in the NTA and the charge of removability was sustained; the court directed Western Samoa[2] as the country of removal. Dkt. 7-3 at 1.

On May 21, 2019, Petitioner met the conditions of a $50,000 bond imposed by an Immigration Judge ("IJ") and was released from detention. Dkt. 7-1 at ¶ 9. However, the IJ later vacated the bond because Petitioner was detained pursuant to 8 U.S.C. § 1226(c), which required mandatory detention. *Id*. at ¶ 10. Petitioner did not appeal this decision. *Id*. Petitioner was returned to custody on May 23, 2019. *Id*. at ¶ 11. After Petitioner's return to custody, his counsel requested and was granted continuances (often over DHS's objection) until May 2020. Dkt. 7-1 at ¶ 12.

On November 1, 2019, the IJ denied petitioner's application for cancellation of removal because Petitioner's manslaughter conviction was a crime involving moral turpitude that rendered him statutorily ineligible for cancellation. Dkt. 7-1 at ¶ 14; Dkt. 7-3 at 16–17. On July 15, 2020, the IJ denied Petitioner's subsequent application to adjust status or be granted lawful permanent residency, finding Petitioner was inadmissible due to his manslaughter conviction and his admitted use of illegal drugs. Dkt. 7-1 at ¶ 17; Dkt. 7-3 at 2–4. However, the IJ granted Petitioner voluntary departure. Dkt. 7-3 at 7–9.

Petitioner appealed to the Board of Immigration Appeals (BIA) on July 24, 2020. Dkt. 7-1 at ¶ 18. On December 18, 2020, the BIA dismissed Petitioner's appeal and denied voluntary departure. *Id*. at ¶ 19; Dkt. 7-4 at 1, 4. The BIA ordered Petitioner's removal to Western Samoa. Dkt. 7-4 at 4.

On January 13, 2021, Petitioner filed a Petition for Review in the Ninth Circuit Court of Appeals and brought a motion to stay his removal. Dkt. 7-1 at ¶ 20; Dkt. 7-5. The Ninth Circuit

---

[2] Western Samoa is now known as Samoa. www.state.gov/contries-areas/samoa (last visited 11/1/21).

REPORT AND RECOMMENDATION - 3

has not yet ruled on the motion, but an automatic temporary stay of removal remains in place. Dkt. 7-1 at ¶ 20. The Docket in Petitioner's appeal indicates the parties have completed the briefing process and the appeal is scheduled for oral argument on November 16, 2021. *Leaupepetele v. Garland*, No. 21-70072 (9th Cir.).

### III.   DISCUSSION

**A.   Statutory Basis for Petitioner's Detention**

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens who are in removal proceedings.[3] The form petition filed by Petitioner asserts he is detained pursuant to 8 U.S.C. 1226(a). Dkt. 3 at 3. The Government contends Petitioner's detention is instead governed by Section 1226(c). Dkt. 7 at 1.

The Government is correct. Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, *unless* the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, __ U.S. ___, 138 S. Ct. 830, 846–48 (2018). Section 1226(c) includes any noncitizen who "is deportable by reason of having committed any offense covered in Section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Petitioner admitted to the factual allegations contained in the NTA, which alleged he was deportable under, *inter alia*, 8 U.S.C. § 1227 (a)(2)(A)(ii). Dkt. 7-3 at 1; Dkt. 7-2 at 3. Furthermore, the BIA affirmed the IJ's conclusion that petitioner's

---

[3] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to the Department of Homeland Security ("DHS"), while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

manslaughter conviction constitutes a crime involving moral turpitude pursuant to Section 1227(a)(2)(A)(ii). Dkt. 7-4 at 1–2. Accordingly, Petitioner's detention is governed by Section 1226(c) and is statutorily mandated until his removal proceedings have concluded.

The petition argues Petitioner's immigration detention shifted from § 1226(c) to § 1226(a) after his removal order became administratively final, citing *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008). Dkt. 3 at 3–4. The Government argues *Casas-Castrillon's* holding that a non-citizen's statutory detention status shifts from § 1226(c) to §1226(a) during the pendency of a petition for review is abrogated by the Supreme Court's decision in *Jennings*, which held detention pursuant to § 1226(c) continues until a decision on whether the non-citizen is removable. Dkt. 7 at 5–7.

The Ninth Circuit has not yet addressed whether its holding in *Casas-Castrillon* remains viable in light of the Supreme Court's decision in *Jennings*. Other courts in this District have concluded it is not, finding *Casas-Castrillon's* holding is clearly irreconcilable with *Jennings*. *See Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 927–28 (W.D. Wash. 2020) (Martinez, C.J., adopting R. & R. of Peterson, M.J., concluding *Casas-Castrillon* is clearly irreconcilable with *Jennings*); *Muhamd v. ICE Field Office Director,* No. 20-605-RAJ, Dkt. 8 (W.D. Wash. Sept. 14, 2020) (R. & R. of Peterson, M.J., same).[4] This Court agrees with the reasoning in *Djelassi* and *Muhamd* and therefore adopts them.

---

[4] Judges in the Northern District of California have reached the opposite conclusion, finding that *Jennings* and *Casas-Castrillon* are not clearly irreconcilable. *See*, *e.g.*, *Avilez v. Barr*, No. 19-8296, 2020 WL 1704456, at *2-3 (N.D. Cal. Apr. 8, 2020), *appeal pending*, No. 20-16142 (9th Cir.); *Birru v. Barr*, No. 20-1285, 2020 WL 1905581, at *7-8 (N.D. Cal. Apr. 17, 2020) (same); *Singh v. Barr*, No 20-2346, 2020 WL 1929366, at *6-7 (N.D. Cal. Apr. 20, 2020) (same). The Ninth Circuit recently held oral argument in *Avilez* and a decision on the continued viability of *Casas-Castrillon* should be forthcoming. *Avilez v. Barr*, No. 20-16142.

The Court therefore concludes Petitioner's detention is governed by § 1226(c). As such, he is subject to mandatory detention until his removal proceedings have concluded, which includes a final ruling on his pending petition for review. The Court does not know of any statutory authority that permits federal courts to order the release of § 1226(c) detainees, and therefore recommends that Petitioner's request for release on statutory grounds be denied.

**B.   Due Process**

Even if authorized under Section 1226(c), Petitioner's continued detention must comport with due process. Petitioner argues his detention has become prolonged and violates his due process rights; he requests release or a bond hearing. The Government counters that Petitioner's continued mandatory detention is reasonable. For the reasons discussed below, the Court concludes Petitioner's detention has not become unreasonably prolonged and the Constitution therefore does not, at this time, require that he be provided a bond hearing.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c). The Supreme Court explained Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens convicted of certain crimes and held "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518–21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in detention of less than about five months. *Id.* at 529–30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018). Overwhelmingly, district courts considering the constitutionality of prolonged mandatory detention—including other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *Report & Recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, No. C18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi*, 434 F. Supp. 3d at 923–24 (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged).

C.     **Test to Determine Reasonableness of Prolonged Detention Under § 1226(c)**

Courts in this District have adopted a "multi-factor analysis that many other courts have relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*, 2019 WL 5968089 at *9. Those factors include:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). These factors are derived from the Supreme Court's decisions in *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and pre-*Jennings* circuit court cases holding, as a matter of constitutional avoidance, that § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222–23 (3d Cir. 2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269–70 (6th Cir. 2003), *abrogated by Jennings*, 138 S. Ct. 830; *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).

Although the Government analyzes the *Martinez* factors and argues they support its position, it also argues Petitioner's detention should instead be analyzed under the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. 7 at 9–15. *Matthews* "requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." *Banda*, 385 F. Supp. 3d at 1106 (citing *Mathews*, 424 U.S. at 334). In *Banda*, the Honorable James L. Robart considered but declined to apply *Mathews*, explaining:

> Courts apply the *Mathews* test to resolve the question of "whether the administrative procedures provided . . . are constitutionally sufficient." 424 U.S. at 334. Thus, the *Mathews* test balances the benefits or burdens of "additional or substitute procedural safeguards." *Id.* at 335. It does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided. Therefore, Magistrate Judge Theiler correctly determined that the *Mathews* test is not "particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." (R&R at 19.)

*Id.* The Court agrees that the multi-factor test applied in this District, rather than the *Mathews* test, should apply here.

The Court therefore applies the test enunciated in *Martinez*, which is applicable in § 1226(c) cases. The Court discusses each factor below and concludes the factors weigh against granting Petitioner a bond hearing.

1. *Length of Detention to Date*

The length of detention is the most important factor. *E.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963–64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *De Oliveira Viegas v Green*, 370 F.Supp.3d 443, 449–50 (D. N.J. 2019) (courts in the District of New Jersey generally deny habeas relief where the petitioner has been detained for a year or just over a year, but granting relief where petitioner was detained 15 months). Petitioner has been held in ICE custody since February 26, 2019, more than 32 months. This factor weighs strongly in favor of granting him a bond hearing.

2. *Likely Duration of Future Detention*

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9.

The BIA has denied Petitioner's appeal and he has filed a Petition for Review with the Ninth Circuit Court of Appeals. Dkt. 7-1 at ¶¶ 19, 20. The docket in Petitioner's appeal shows that the parties have completed the briefing process and oral argument is scheduled for

November 16, 2021. *Leaupepetele v. Garland*, No. 21-70072 (9th Cir.). Most cases are decided within three to twelve months of oral argument. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited 11/1/21). Petitioner's case might be decided quickly, but it is also possible the Ninth Circuit will not decide his case for another year. Thus, the Court concludes this factor weighs slightly in Petitioner's favor.

       3.    *Criminal History*

Third and fourth, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of his crimes. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F. Supp. 3d at 262. The relevance of these factors is they are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F.Supp.3d at 262. Here, Petitioner committed serious crimes and has been subjected to extensive confinement. His most serious crime, First Degree Manslaughter, let to a sentence of 75 months—nearly double his immigration detention to date. In addition, Petitioner has received sentences for two additional convictions of violent crimes (not including the vacated controlled substance conviction) of 36 months and 12 months, respectively. These factors therefore weigh in favor of the Government.

       4.    *Conditions of Detention*

Next, the Court considers the conditions at the NWIPC where Petitioner is detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quoted source

omitted). The parties do not present evidence regarding the conditions at the NWIPC, and therefore the Court finds this factor to be neutral.

        5.        *Delays in Removal Proceedings*

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the Petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 965 (citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [noncitizen]."). Thus, this factor weighs against finding detention unreasonable when a noncitizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019).

With respect to the Government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . .. Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*).

The Government submits evidence (unrebutted by Petitioner) that one year of delay is attributable to Petitioner's counsel's requests for multiple extensions—which the IJ granted over the Government's objection. Dkt. 7-1 at ¶ 12. While there is no evidence that the extension requests were made in bad faith, it nonetheless appears that much of the delay at the IJ level is attributable to Petitioner. In contrast, there is no evidence of Government-caused delays, and the next level of review at the BIA was completed in a relatively short five months. The Court concludes these factors weigh in the favor of the Government.

6.   *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and *Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 499–500).

Petitioner is pursuing an appeal of his removal order before the Ninth Circuit. The record does not contain sufficient information to enable the Court to make a prediction of the likelihood of Petitioner's success, but in the absence of any evidence Petitioner's appeal is frivolous or taken in bad faith, the court concludes this factor is neutral.

7. *Weighing the Factors*

As discussed above, two factors weigh in Petitioner's favor, four factors weigh in the Government's favor, and two factors are neutral. The Court therefore concludes Petitioner's mandatory detention cannot be deemed at this point to have been prolonged and is not unreasonable. Petitioner is therefore not entitled to a bond hearing at this time.

**D.    Petitioner is Not Entitled to Release**

Petitioner also requests release from detention. Dkt. 3 at 2. A noncitizen is entitled to release if he can show his detention is indefinite within the meaning of the Supreme Court's decision in *Zadvydas*. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062–63 (9th Cir. 2008) (applying *Zadvydas* to habeas petitioner who was subject to § 1226(a) detention). In *Prieto-Romero*, the Ninth Circuit held the petitioner's detention was not indefinite because the government could repatriate him to Mexico if his pending petition for review was unsuccessful. *Id.* Petitioner here does not present any evidence ICE will not be able to remove him to Samoa if he is ultimately ordered removed. Accordingly, petitioner's removal is not indefinite, and he is not entitled to an order of release.

**E.    Family Unity Program**

Petitioner attached to his petition a hand-written addendum asserting that he is entitled to remain in the United States pursuant to the Family Unity Program enacted in the Immigration Act of 1990. Dkt. 1 at 7–9.

The Family Unity Program applies to a "spouse or unmarried child of a legalized [noncitizen]." Immigration Act of 1990, PL 101–649, November 29, 1990, 104 Stat 4978 (codified as a note to 8 U.S.C. §1255a); *see Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1009 (9th Cir. 2006) ("The [Family Unity Program] permits qualified alien spouses or unmarried children of legalized aliens, who entered the United States before 1988 and have continuously resided in the United States since that time, to apply for the benefits of the program, which include protection from deportation and authorization to work in the United States"), *overruled on other grounds, Medina-Nunez v. Lynch*, 788 F.3d 1103, 1105 (9th Cir. 2015).

Petitioner submits no evidence that he has made any application under this program nor, if he did apply, of the status of any such application. The Government asserts the regulations governing the Family Unity Program would exclude Petitioner in any event, because they exclude from eligibility a noncitizen who—like Petitioner— "has been convicted of a felony." Dkt. 7 at 17 (quoting 8 C.F.R. § 236.13).

More fundamentally, Petitioner's argument that he is "entitled to remain in the United States" through the Family Unity Program is a challenge to his removal order—which this Court lacks jurisdiction to adjudicate. In the REAL ID Act of 2005, Congress amended the Immigration and Nationality Act to "expressly eliminate[] habeas review over all final orders of removal . . .." *A. Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007). It provided that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal 8 U.S.C. § 1252(a)(5); *see Martinez-Rosas v. Gonzales*, 424 F.3d 926, 929 (9th Cir. 2005) (under REAL ID Act, a petition for review in the court of appeals "is now the exclusive means for challenging final removal orders by the [Board of Immigration Appeals ("BIA")] . . ..").

1 The REAL ID Act was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *V. Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109-72 at 175). Accordingly, as a general rule, noncitizens "may continue to bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus." *Id.* (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (9th Cir. 2008)). But while the courts must be careful "not to unduly circumscribe their habeas jurisdiction," they "must also avoid the opposite pitfall, and recognize the lack of jurisdiction where a habeas petition 'directly implicate[s] the order of removal.' *V. Singh*, 639 F.3d at 1211 (quoting *Nnadika v. Att'y Gen. of U.S.,* 484 F.3d 626, 632 (3d Cir. 2007).

Here, Petitioner's Family Unity Program claim does not bring a collateral challenge to his detention but is instead a direct challenge to the order removing him from the United States. Petitioner may not bring such a challenge in this Court; instead, judicial review of Petitioner's removal order is only available from the Ninth Circuit—where Petitioner has a pending petition for review. Dkt. 7-5. The Court therefore lacks jurisdiction to consider Petitioner's Family Unity Program argument.

## IV.   CONCLUSION

The Court recommends GRANTING the Government's motion to dismiss (Dkt. 7), DENYING Petitioner's habeas petition (Dkt. 3), and DISMISSING this case with prejudice. A proposed order accompanies this Report and Recommendation. The Court further recommends that Petitioner's IFP application (Dkt. 6) be denied as moot because he has paid the filing fee.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on November 19, 2021 as noted in the caption.

Dated this 4th day of November, 2021.

*[signature]*

David W. Christel
United States Magistrate Judge